## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **STEPHEN  HAMMONDS**, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 4:16-BE-1558-M** |
| | ) | |
| **DEKALB COUNTY, AL, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This § 1983 case alleges violations of various constitutional rights as well as the Americans with Disabilities Act and § 504 of the Rehabilitation Act when the Plaintiff suffered a serious medical crisis as a pretrial detainee in the DeKalb County jail.  It comes before the court on "Defendant DeKalb County's Motion to Dismiss Plaintiff's Complaint" (doc. 9) and "Defendants Sheriff Jimmy Harris, Administrator Matthew Martin, and Doctor Robert Theakston's Motion to Dismiss Plaintiff's Complaint" (doc. 11). The Plaintiff has filed responses to these motions (docs. 18-County & 19-other Defs.), and the Defendants have filed replies (docs. 20-County & 21-other Defs.).

In response to the portions of the motions asserting that venue is improper, and the Plaintiff's acknowledgment of improper venue, the court has already transferred the case from the Southern Division to the Middle Division of the Northern District of Alabama.  (Doc. 25). However, the Defendants also request dismissal on other grounds.  For the reasons stated in this Memorandum Opinion, the court FINDS that the remaining parts of the motions are due to be

1

GRANTED IN PART and DENIED IN PART.  The court WILL GRANT both motions as to the claims asserted in Counts I-III and WILL DISMISS those claims WITH PREJUDICE.  The court will DENY both motions as to the claims asserted in Count IV for deliberate indifference in violation of the Due Process Clause of the Fourteenth Amendment; however, the court WILL GRANT the individual Defendants' motion for more definite statement as to the claims asserted in Count IV and WILL ORDER a more definite statement of those claims asserted against all Defendants, including the County.

## I.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009).   Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." Id. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

## II.  FACTS

### A.  ODO Report

In determining what facts are part of the Complaint, the court FINDS that it may properly include the contents of the following report: *Office of Detention Oversight Compliance Inspection Enforcement and Removal Operations Report New Orleans Field Office DeKalb County Detention Center, Fort Payne, Alabama, July 15-17, 2014* (OPR 201408728), U.S. Dept of Homeland Security Enforcement & Removal Operations, New Orleans, La. Field Office (2014).  The Complaint refers to that report in paragraphs 74-78 & 80 and provides a citation to it in footnote 1 to the Complaint; Mr. Hammonds relies on the report in his Response to the County's motion and brief as providing notice to the County of deficiencies in the medical care provided to inmates of the DeKalb County Jail (doc. 18, at 2, 7-9); and the Defendant County provided a copy of that report as an attachment to its reply brief (doc. 20-1).  Mr. Hammonds has not challenged the authenticity of the copy of the report that the County provided.

"When matters outside the pleadings are presented to and not excluded by the district court in a [motion to dismiss], the motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Nalls v. Coleman Low Federal Inst.*, 307 Fed. App'x 296, 297 (11th Cir. 2009) (citing Fed. R. Civ. P. 12).  However, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.  In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

4

The court FINDS that the report in question is central to Mr. Hammonds's claim and its authenticity is undisputed.  Accordingly, the court considers the content of this document in its consideration of the motions to dismiss without converting them into a motions for summary judgment.

**B.  Facts**

The allegations in this case are based on events that occurred involving Plaintiff Stephen Hammonds from September 29, 2014 through October 16, 2014, while he was detained at the DeKalb County Detention Center ("Jail") in Fort Payne, Alabama.

1.  Mr. Hammonds's Condition

Mr. Hammonds suffers from Diabetes Mellitus Type I, also known as juvenile onset diabetes, which requires frequent monitoring of blood sugar levels.   To control his disease, Mr. Hammonds uses a combination of short term and long term insulin, and keeps his medication and monitoring devices with him at all times.  Since his 1994 diagnosis, he has successfully self-managed his condition with this insulin combination and monitoring.  The disease could impair the operation of major bodily functions and the ability to concentrate if blood sugar levels become out of control.  A potential life-threatening complication of this disease is diabetic ketoacidosis ("DKA"), which can lead to nerve damage, blindness, systemic organ failure or death.  The warning signs of DKA include vomiting, dehydration, shortness of breath, confusion, inability to consume or retain food, and coma-like symptoms of unconsciousness.  Treatment for DKA involves intravenous fluids, insulin, and other additives, and may vary depending on blood tests and sugar levels.

2.  Mr. Hammonds's Arrest and Detention at the Jail in DeKalb County

On September 29, 2014, DeKalb County officers arrested Mr. Hammonds for unlawful

possession of a controlled substance and drug paraphernalia, and took him to the Jail, where he

was held as a pretrial detainee.  Mr. Hammonds had advised the arresting officers of his

condition and his need for insulin injections, and the arrest report noted it, stating "Medical:

severe Type I diabetic takes 2 shots daily * no phone calls per DTF (Drug Task Force)."  (Compl.

Doc. 1, at 9 ¶ 22).  The arresting officers confiscated his insulin medication, injection syringes,

and blood-glucose monitor.

The Complaint does not assert claims against Mr. Hammonds's arresting officers, but

asserts that the Constitutional and statutory violations occurred upon his detention at the KeKalb

County Jail.  The Complaint lists the following individuals as violating Mr. Hammonds's

Constitutional and statutory rights:  DeKalb County Sheriff Jimmy Harris, DeKalb County Chief

Jail Administrator Matthew Martin, and the doctor that the jail employs part-time, Dr. Robert

Theakston.

Upon arriving at the jail, Mr. Hammonds was initially placed in a holding cell, and he

was not given access to DeKalb County's electronic medical kiosk.  When he received initial

medical screening, Mr. Hammonds weighed approximately 180 pounds, and Dr. Theakston and

the medical staff examined him only upon arrival.  Mr. Hammonds advised Dr. Theakston,

DeKalb County jailers and jail medical staff, including administrator Martin, about his condition,

medical history, and, specifically, his need for a special Type R and Type N (long- and short-

acting) insulin combinations to control his type of diabetes. Sheriff Harris also had notice of his

medical condition.   However, Dr. Theakston took no steps to verify Mr. Hammonds's statements

6

about his specific insulin needs, and instead, placed him on the sliding scale insulin dosage commonly used for Diabetes Mellitus Type II, a different type of diabetes.  During his incarceration, Mr. Hammonds was never provided the long- and short-acting insulin injections. Further, Mr. Hammonds was only occasionally allowed to monitor his blood sugar levels.

On the day after his arrest, September 30, Mr. Hammonds was transferred from the holding cell to "B-Pod," and began experiencing symptoms of high blood sugar because of insulin deprivation.  He suffered from abdominal pain, began vomiting, became unable to eat or drink, and experienced confusion, continuous aches, and dizzy spells.  He was unable to move easily, and other inmates lifted him from the floor to his bunk.  During the times when he was periodically lucid, Mr. Hammonds pleaded to see the doctor and continued to report his diabetic condition, his need for proper long- and short-acing insulin injections, and the risk of diabetic ketoacidosis.  He repeatedly informed the DeKalb County staff and its jailers that he was in great pain.  However, he did not see Dr. Theakston or any of DeKalb County medical staff again after the initial medical screening on September 29, and the jailers reacted to his requests for medical care by threatening him and refusing to provide such care.

The jail provided an electronic kiosk for the detainees to submit medical care requests. However, Mr. Hammonds never transmitted a request for medical care via the kiosk.  He alleges that he never did so because no one provided him with the password needed to access the kiosk.

By October 3, 2014, Mr. Hammonds was in such a serious medical crisis that he called his father, Bobby, to tell him that he did not think he would live through the night.  Bobby Hammonds relayed this information to his daughter, Sherri Hammonds, who reported the crisis by calling 911.  Chief Martin, or someone identifying himself as holding Martin's position, Jail

Chief for DeKalb County, called the Hammonds family and threatened the entire family with arrest and jail time for calling 911.  Mr. Hammonds's mother, Carla, told Chief Martin that the family had called 911 out of concern for Stephen Hammonds's health, and asked whether she could bring him insulin injections, a request Chief Martin denied.  Chief Martin ended the call by threatening the family with jail time and stating that his dinner better not be interrupted again.

Subsequent to the call between Chief Martin and the Hammonds family, jail personnel took Stephen Hammonds to an empty medical ward and threatened him if he lodged further complaints.  Officers then handed Stephen Hammonds a phone with the Chief on the line, who proceeded to mock Mr. Hammonds and threaten him with solitary confinement if he complained again and interrupted the Chief's dinner.  The Chief also communicated to Stephen Hammonds that "things [ ] would get worse for him and his family" if the Chief received another call from 911.  (Doc. 1, at 15, ¶ 54).

From October 3, 2014 to October 5, 2014, Stephen Hammonds was placed in a solitary confinement cell, was denied all phone privileges and medical care, and was locked out of the county medical kiosk system.  Mr. Hammonds suffered from insulin deprivation and untreated DKA, and began losing both feeling in his extremities and the ability to regulate his temperature.  By October 5, 2014, Mr. Hammonds became incoherent and unresponsive.   The DeKalb County jailers and deputies then transported him to DeKalb County Regional Hospital's emergency room; however, no one informed the Hammonds family that he was in the hospital.

Immediately upon his arrival at the hospital, Mr. Hammonds was diagnosed as suffering from DKA, Type I diabetes (uncontrolled), and acute renal/kidney failure with the characterization of his condition as "serious," and with the accompanying diagnoses and/or

symptoms of anemia, dehydration, nausea, vomiting, abdominal cramps, fatigue, malaise, Leukocytosis (increased number of white cells, especially during an infection), tachycardia (a heart rate that exceeds the normal resting rate), and acute hypokalemia (low potassium). Mr. Hammonds was admitted to the hospital on October 5, 2014 and remained there until his discharge on October 8, 2014, at which time he weighed approximately 151 pounds, a 30-pound weight loss since the beginning of incarceration nine to ten days earlier.

Upon discharge, Mr. Hammonds returned to the DeKalb County Jail, where he was again separated from other inmates and was refused access to the electronic medical kiosk.  Despite Mr. Hammonds's hospital stay, Dr. Theakston did not see him upon his return to the jail, and all jail personnel continued to refuse his request for short- and long-acting insulin injections. From October 8-16, 2014, Mr. Hammonds's blood sugar remained abnormally high and unregulated.

On October 16, 2014, Criminal Defense Attorney Robert Ray visited Mr. Hammonds, as he had been appointed to represent him.  Mr. Ray observed his medical condition and obtained Mr. Hammonds's release.  Upon his release, Mr. Hammonds called an ambulance from the jail for transport back to the DeKalb Regional Hospital.  A neurological exam at the hospital reflected that Mr. Hammonds was suffering from extensive nerve damage and numbness.  On October 17, 2014, Huntsville Regional Hospital treated Mr. Hammonds and further evaluated his nerve damage.

Mr. Hammonds alleges that he continues to suffer from peripheral neuropathy as a result of being deprived of the correct insulin while in jail, and he claims to be permanently disabled as a result of that condition.  He also claims to have emotional impairments.

3.  Claims in the Complaint

a.  Counts and Theories of Recovery

The Complaint asserts the following claims: Count I - Violation of the Eighth

Amendment prohibition against cruel and unusual punishment, asserted against the County,

Chief Martin and Dr. Theakston; Count II - Violation of Title II of the Americans with

Disabilities Act ("ADA"), asserted against the County, Sheriff Harris, Dr. Theakston, and Chief

Martin; Count III - Violation of Section 504 of the Rehabilitation Act of 1975, asserted against

the County, Sheriff Harris, Dr. Theakston, and Chief Martin; and Count IV - Violation of the

Substantive Due Process Clause of the Fourteenth Amendment based on deprivation of the

fundamental right to adequate medical care, asserted against the County, Sheriff Harris, Dr.

Theakston, and Chief Martin.  Mr. Hammonds requests a declaratory judgment that these

practices violate the Constitution; the ADA; and the Rehabilitation Act.  He also requests that

this court enjoin those practices and order the development and implementation of new

appropriate practices, and award monetary damages and punitive damages against the

individually named defendants, as well attorneys' fees, costs, and interest to him.

b.  The July 2014 Report

To support his deliberate indifference claims, Mr. Hammonds alleges in his Complaint

that the Defendants were on notice of the inadequacy of policies and practices involving medical

care at the Jail because of a report of the U.S. Department of Homeland Security dated July 2014.

The Department concluded that the Jail medical and dental care was deficient because initial

medical and dental screenings were not completed within the 14-day time frame specified by

national detention standards.  (Doc. 20-1, at 16-17).  In the instant case, however, Mr.

10

Hammonds received an initial medical screening within a few hours of his arrival, and the Complaint states no claims of serious medical needs involving dental care.

The Complaint refers to statements in the report that do not correspond to deficiency findings.  For example, the Complaint refers to the report's statements that the Jail facility "holds no accreditations"; however, the report finds no deficiencies as a result.  The review "confirmed the credentials of the three medical staff and the contract physician, including licensure, insurance, and other certifications, were current and verified at the primary source.  There was no documentation of restrictions on the licenses."

The Complaint also refers both to the jail's practice of using an electronic kiosk for the detainees to submit requests for medical care and to the report's finding that "detainees are seen for sick call within 24 to 48 hours" of the request through the kiosk.  However, the report does not find a deficiency in the 24- to 48-hour response time for kiosk requests, and the facts reflect that Mr. Hammonds did *not* submit a request through the kiosk; the allegations state that "he was locked out of" and "denied access" to the kiosk system.  (Report:  Doc. 20-1, at 16-17-report; Compl. allegations:  Doc. 1, at 15 ¶ 56; 17 ¶ 65; 19 ¶ 74).

### III.  DISCUSSION

#### A.  Rulings that Apply to Both Motions

##### 1.  Count I's Eighth Amendment Claims

The individual Defendants assert that Count I's Eighth Amendment claim is due to be dismissed because the analysis of deliberate indifference regarding a pretrial detainee's medical needs is governed by the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's Cruel and Unusual Punishment Clause.  *See Melton v. Abston,* 841 F. 3d 1207,

11

1220 (11th Cir. Nov. 18, 2016); *Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (11th Cir. 1996) (citing

*Bell v. Wolfish,* 441 U.S. 520, 535 & n. 16, 99 (1979)).  The County did not raise this issue in its

motion to dismiss; however, Count I also asserts claims against the County regarding his pretrial

detention.  Because Mr. Hammonds states clearly in his Complaint that he was a pretrial detainee

and confirms that fact in his response (doc. 19, at 6-7), and because he brings a Fourteenth

Amendment claim, the court FINDS that the Eighth Amendment claim asserted against the

County, Chief Martin, and Dr. Theakston is due to be DISMISSED WITH PREJUDICE.

2.  Count II's ADA Claim

Mr. Hammonds asserts the ADA claim in Count II against all Defendants:  the County,

Sheriff Harris, Dr. Theakston, and Chief Martin.   The individual Defendants do not challenge

whether Type I Diabetes qualifies as a disability under the ADA.  Instead, they argue that the

ADA does not apply to the facts alleged, which they characterize as asserting, in essence, that the

Defendants failed to provide adequate medical care for his diabetes.  The County does not raise

this argument, but it has also filed a motion to dismiss all claims, including the ADA claim.

Title II of the ADA, 42 U.S.C. § 12132, states: "[N]o qualified individual with a

disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities or a public entity, or be subjected to

discrimination by any such entity."  To state a claim under Title II of the ADA, "a plaintiff must

allege: (1) that he is a 'qualified individual with a disability;' (2) that he was 'excluded from

participation in or . . . denied the benefits of the services, programs, or activities of a public

entity' or otherwise 'discrimination [against] by such entity;' (3) 'by reason of such disability.'"

*Shotz v. Cates,* 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132).  "The term

'public entity' is defined to include any instrumentality of state or local government. . . . There is no express exclusion of jails or prisons." *Bryant v. Madigan,* 84 F.3d 246, 248 (7th Cir. 1996).

In Count II of the Complaint, Mr. Hammond asserts that Defendants "denied Hammonds the appropriate medical care [for his diabetic disability] because they were deliberately indifferent to his medical needs. . . .  All the Defendants deprived Hammonds of the ability to participate in their medical services by failing to properly monitor his insulin, refusing to allow Hammonds to self regulate and manage his insulin, and by not properly caring for the nutrition he needed to prevent the permanent nerve damage he ultimately sustained." (Compl. Doc. 1, at 26 ¶ 26 ¶ ¶ 97-98 & at 27 ¶ 101.

As the individual Defendants point out, the alleged fact that Defendants did not provide medical care for Mr. Hammonds's diabetes does not, standing alone, support the claim that they discriminated against him *because of* his diabetes.  Courts have repeatedly stated that no violation of the ADA occurs simply by failing to provide medical care to disabled prisoners or detainees.  *See Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289, 1294 (11th Cir. 2005) (quoting with approval *Bryant,* 84 F.3d at 249) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment" and "'would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.'"); *Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1144 (10th Cir. 2005) (addressing whether an ADA violation occurred based on a prison doctor's recommendation that the prison "do nothing" as an acceptable course of treatment for the plaintiff, and concluding that "purely medical decisions [ ] do not normally fall within the scope of the ADA . . . .").

Further allegations in Mr. Hammonds's Complaint that inadequate medical care is a

13

systemic issue from which the general jail population suffers, regardless of whether they have a disability, reflect that the failure to provide adequate care occurred because Mr. Hammonds was an inmate or detainee at the Jail, not because he is disabled.  Based on the allegations, he was not treated worse than the other prisoners needing medical care *because he is disabled*, and he is not complaining of being excluded from some prison program, service, or activity *that the non-disabled prisoners could obtain*.  Rather, he is complaining, in essence, about incompetent treatment of his diabetes, a complaint for which the ADA does not create a remedy.  *See Bryant*, 84 F.3d at 249 ("The ADA does not create a remedy for medical malpractice.").  The court FINDS that the ADA claims are due to be DISMISSED against the individual Defendants.

The court notes that the County also filed a motion to dismiss the ADA claim.  To the extent that the ADA claim in Count II against the County is based upon incompetent treatment of his diabetes, the ADA does not create a remedy for this claim, as stated above.  To the extent that the ADA claim in Count II against the County is based on inadequate funding, the claim against the County nevertheless fails as a matter of law because Mr. Hammonds does not allege facts that the County's policy of providing inadequate funding is "by reason of such disability."  Therefore, Count II does not state an ADA claim against the County, and that claim against the County is due to be DISMISSED.

The court WILL DISMISS WITH PREJUDICE all claims asserted in Count II, not only those asserted against the individual Defendants, but also those asserted against the County.

### 3.  Count III's Rehabilitation Act Claims

In Count III of his Complaint, Mr. Hammonds asserts that all Defendants violated § 504 of the Rehabilitation Act, and further asserts that the jail constitutes a "program or activity

14

receiving Federal financial assistance" within the meaning of § 504 of that Act.  The individual

Defendants' argument that this claim is due to be dismissed is similar to their ADA argument:

they claim that the Complaint's allegations, if true, would not support that Mr. Hammonds was

mistreated solely because of his handicap.  The County filed a separate motion to dismiss that

does not raise this argument, but the individual Defendants' arguments would encompass the

claims against the County as well.

Section 504 of the Rehabilitation Act of 1973, as amended, provides in pertinent part, that

"[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by

reason of her or his disability, be excluded from the participation in, be denied the benefits of, or

be subjected to discrimination under any program or activity receiving Federal financial

assistance . . . ." 29 U.S.C. § 794.  To establish a *prima facie* case for discrimination under the

Act, a plaintiff must show that he "(1) is 'handicapped' within the meaning of the Act and

relevant regulations, (2) is 'otherwise qualified' for the position in question, (3) worked for a

Program or activity that received federal financial assistance; and (4) was adversely treated solely

because of his or her handicap."  *Jackson v. Veterans Admin.,* 22 F.3d 277, 278 (11th Cir. 1994).

The court FINDS that Mr. Hammonds has not stated a claim under the Rehabilitation Act,

which does not apply when jail personnel simply fail to attend to the medical needs of its

"handicapped" detainees or prisoners.  The Eleventh Circuit explained that "[t]he Rehabilitation

Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment"

and quoted with approval the Seventh Circuit's statement that the Act "'would not be violated by

a prison's simply failing to attend to the medical needs of its disabled prisoners.'" *See Schiavo,*

403 F.3d at 1294 (quoting with approval *Bryant,* 84 F.3d at 249).  Cases addressing section 504

15

reflect that the "otherwise qualified" phrase is meant for static activities and programs such as education, employment, and transportation systems.  *See, e.g., Southeastern Cmty. College v. Davis*, 442 U.S. 397, 405-07 (1979) (education); *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 307 (5th Cir. 1981) (employment); *Dopico v. Goldschmidt,* 687 F.2d 644, 652-53 (2d Cir. 1982) (transportation).   The Second Circuit Court of Appeals explained that the Act's "otherwise qualified" phrase "cannot be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning" and noted that "[i]f congress intended section 504 to apply in this manner, it chose strange language indeed."   *U.S. v. Univ. Hosp.  State Univ.,* 729 F.2d 144, 156-57 (1984).   Further, as to the "subjected to discrimination" requirement, the Court examined case law and legislative history and concluded that "congress never contemplated that section 504 would apply to [medical] treatment decisions of this nature."  *Id.*   The Eleventh Circuit quoted with approval the Second Circuit's conclusion.  *Schiavo*, 403 F.3d at 1294.

Applying these decisions to the instant case, this court concludes that the Rehabilitation Act does not apply to the facts alleged.  The claim in Count III brought under the Rehabilitation Act is due to be DISMISSED WITH PREJUDICE as to the individual Defendants.

The County has also filed a motion to dismiss that requests the dismissal of Count III.  To the extent that the Rehabiliation Act claim in Count III against the County is based upon incompetent treatment of his diabetes, the Rehabilitation Act does not apply to this claim, as discussed above.  To the extent that the claim in Count III against the County is based on inadequate funding, the claim against the County nevertheless fails as a matter of law because Mr. Hammonds does not allege facts that the County's policy of providing inadequate funding is solely because of his handicap or solely because of discrimination against handicapped persons.

16

Therefore, Count III does not state a claim against the County under the Rehabilitation Act, and that claim against the County is due to be DISMISSED.

The court WILL DISMISS WITH PREJUDICE all claims asserted in Count III, not only those asserted against the individual Defendants, but also those asserted against the County.

### B.  Count IV: Violation of Fourteenth Amendment Due Process

Count IV asserts a claim under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment's Due Process claim for deliberate indifference to Mr. Hammonds's serious medical needs.  To establish a claim under § 1983, a plaintiff must assert "(1) the violation of a constitutional right; and (2) that the alleged violation was committed by a person acting under the color of state law or a private individual who conspired against state actors." *Melton,* 841 F.3d at 1220.

#### 1.  Motion to Dismiss of Individual Defendants

The only remaining Count in this Complaint, Count IV, begins with a sentence stating that it "incorporates all other paragraphs of this Complaint as if fully set forth herein."  (Compl. Doc. 1, at 37).  Because 134 paragraphs precede Count IV, the court and the Defendants are left guessing about which of the facts in those 134 are relevant to the allegations in Count IV.  The individual Defendants assert that the allegations in Count IV constitute shotgun pleading and require re-pleading of a more definite statement.  They request that the court order a more definite statement for the sake of judicial clarity and efficiency.  (Doc. 12, at 17-21).

The Eleventh Circuit Court of Appeals has "been roundly, repeatedly, and consistently condemning [shotgun pleading]" for over thirty years.  *Paylor v. Hartford Fire Ins. Co.,* 748 F.3d 1117, 1125 (11th Cir. 2014) (quoting *Davis v. Coca-Cola Bottling Co.,* 516 F.3d 955, 979 (11th

Cir. 2008)); *see also Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1320 (11th Cir. 2015).

The court WILL DENY the motion to dismiss this Count but WILL GRANT the request for a more definite statement of it.  Given that the court will dismiss Counts I-III as discussed previously, the court WILL ORDER Mr. Hammonds to file an Amended Complaint omitting Counts I-III and containing a more definite statement of the § 1983 claim asserted against all Defendants for violation of the Due Process clause of the Fourteenth Amendment in what was Count IV of the original Complaint.[1]  The more definite statement should specify which Defendant committed which acts instead of lumping them together as the current Complaint sometimes does, as if all Defendants acted at all times in concert.  If Mr. Hammonds separates that claim into two or more Counts (for example, if he separates the Due Process claim by Defendant), he need not re-state every relevant fact in each Count, but, at the very least, he should specify which of the preceding paragraphs contain relevant facts instead of incorporating by reference *all* preceding paragraphs and requiring the court and the Defendants to engage in guesswork about what allegations apply to which claim against which Defendant.

Further, the court acknowledges that "in this Circuit [ ] supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003); *see*

---

[1] Although the County does not raise the shotgun pleading issue, the deficiency in pleading affects the claims asserted in Count IV against the County as well.  For example, because of the incorporation by reference of all previous paragraphs, the court cannot determine whether the claims asserted against the County in Count IV are limited to failure to fund or whether the Plaintiff is also asserting that the County voluntarily assumed by contract an obligation that it did not have under Alabama statutory law.  The court will order more definite statement of the claims asserted against *all* Defendants in what is currently Count IV.

*Cook ex rel Estate of Tessier v. Sheriff of Monroe Cty., Fla.,* 402 F.3d 1092, 1115-16 (11th Cir. 2005). Therefore, in the Amended Complaint, Mr. Hammonds should specify facts that would support liability based on each individual Defendants' *own* acts or omissions. When the allegations are based on supervisory liability, the facts alleged should support a causal relationship between the supervisory official's own acts or omissions and those of his subordinates. *Brown v. City of Huntsville,* 608 F.3d 724, 737 (11th Cir. 2010) (citing *Zatier v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986)). The re-pleading may resolve the individual Defendants' argument regarding the inadequacy of the current Complaint's allegations of supervisory liability, so the court will not address that argument at this point.

In the Amended Complaint, Mr. Hammonds should also clarify whether he is suing the individual Defendants in their *official* and/or *individual* capacities.

Given the ruling requiring a more definite statement, the court will not address the individual Defendants' remaining arguments for dismissal of this Count.

### 2. Motion to Dismiss of DeKalb County

Given the previous rulings that the County's motion to dismiss is due to be granted as to the claims in Counts I-III, the only remaining claim against the County in the Complaint is set forth in Count IV, for deliberate indifference in violation of the Due Process Clause of the Fourteenth Amendment. The court WILL DENY the County's motion to dismiss as to the claims in that Count but, as discussed above, WILL ORDER a more definite statement of that claim as asserted against all Defendants, including the County. Hopefully, the Amended Complaint will clear up any ambiguities regarding whether Mr. Hammonds is asserting any deliberate indifference claims against the County in addition to those based on inadequate funding of the

19

Jail and its staff. The court acknowledges the County's argument that even the inadequate funding claim fails to state a claim in light of lack of notice and lack of causation; for example, the deficiencies identified in the ODO report upon which Mr. Hammonds relies as prior notice of the inadequate funding and insufficient medical care at the Jail do not appear to correlate to the alleged deficiencies in Mr. Hammonds's own medical care at the Jail. If the County's argument still applies to the allegations in the Amended Complaint, the County will have an opportunity to incorporate by reference such argument and re-assert it.

Dated this 25th day of January, 2017.

*Karon O. Bowdre*

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE