# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| STEPHEN HAMMONDS, ] | |
| ] | |
|     Plaintiff, ] | |
| ] | |
| v. ] | CIVIL ACTION NO: |
| ] | 4:16-cv-1558-KOB |
| DEKALB COUNTY, AL, et al., ] | |
| ] | |
|     Defendants. ] | |

## MEMORANDUM OPINION

This cause comes before the court on motions to dismiss Plaintiff Stephen Hammonds's Second Amended Complaint (doc. 39) filed by Defendants DeKalb County (doc. 45), Sheriff Jimmy Harris (doc. 47), and Robert Theakston and Matthew Martin (doc. 49). Mr. Hammonds alleges violations of his Fourteenth Amendment rights through § 1983 and discrimination through the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. While a pretrial detainee at the DeKalb County jail, Mr. Hammonds, a Type-I diabetic, suffered a serious medical crisis, which, Mr. Hammonds claims, Defendants caused or failed to timely address.

For the reasons stated in this Memorandum Opinion, the court will GRANT the County's and Sheriff Harris's motions to dismiss and GRANT IN PART and DENY IN PART Dr. Theakston and Mr. Martin's motion to dismiss. Specifically, the court will DISMISS WITH PREJUDICE Count I against all Defendants, Count II against the County, and Count III against Sheriff Harris. However, Mr. Hammonds may proceed with his claims in Counts IV and V that

Dr. Theakston and Mr. Martin, respectively, personally participated in the alleged constitutional deprivations.

## PROCEDURAL HISTORY

Mr. Hammonds brought this action pursuant to the ADA, Rehabilitation Act, and 42 U.S.C. § 1983. Defendants moved to dismiss Mr. Hammonds's original complaint under Fed. R. Civ. P. 12(b)(6). (Docs. 9, 11). This court granted the motions to dismiss as to Mr. Hammonds's ADA and Rehabilitation Act allegations and ordered Mr. Hammonds to provide a more definite statement as to his § 1983 claims. (Doc. 27). Although the court originally dismissed Mr. Hammonds's ADA and Rehabilitation Act allegations with prejudice, it reconsidered and permitted Mr. Hammonds to file an amended complaint. (Doc. 38). Mr. Hammonds filed his Second Amended Complaint (doc. 39) and Defendants responded with their second round of motions to dismiss (docs. 45, 47, 49), which are now fully briefed and under submission.

## STANDARD OF REVIEW

The court incorporates and adopts the standard of review outlined in its prior Memorandum Opinion (doc. 26) addressing Defendants' first motions to dismiss.

## FACTS

Because the facts alleged by Mr. Hammonds in his Second Amended Complaint are substantially the same as those in the original complaint, the court adopts its factual statement from the prior Memorandum Opinion (doc. 26). The court likewise adopts its finding that it will consider the July 2014 Department of Homeland Security report ("DHS Report") referenced by Mr. Hammonds's complaints. Furthermore, the court adopts its previous findings about the DHS Report's weight with respect to Mr. Hammonds's allegations.

Briefly stated, Mr. Hammonds, who suffers from Diabetes Mellitus Type I, alleges that the County, Sheriff Harris, Dr. Theakston, and Mr. Martin denied him access to the necessary medical treatment for his condition while they detained him at the DeKalb County jail. As a result, Mr. Hammonds suffered multiple diabetes-related complications, including diabetic ketoacidosis ("DKA"), anemia, leukocytosis, and acute renal and kidney failure. Mr. Hammonds alleges that he informed Defendants of his condition, but they failed to treat him properly. Specifically, he contends that Dr. Theakston, a physician, placed him on a treatment regime for Type-II diabetes patients. That regime was inadequate to treat Type-I diabetes and led to Mr. Hammonds's complications. Further, while Mr. Hammonds's condition was deteriorating, Mr. Hammonds's family called 911 to report his condition. Mr. Martin got wind of the call and threatened Mr. Hammonds's family members with arrest and jail.

In Count I of the Second Amended Complaint, Mr. Hammonds alleges that all four Defendants violated the ADA and the Rehabilitation Act by denying him proper care. In Count II, Mr. Hammonds alleges that the County violated § 1983 and the Fourteenth Amendment by depriving him of his fundamental right to adequate medical care. In Counts III, IV, and V, Mr. Hammonds alleges that Sheriff Harris, Dr. Theakston, and Mr. Martin, respectively, acted to deprive him of his fundamental right to adequate medical care. Mr. Hammonds appears to allege that Sheriff Harris, Dr. Theakston, and Mr. Martin acted both personally and as supervisors to injure him. Mr. Hammonds asks the court to enter a declaratory judgment that Defendants' practices violate the Constitution, the ADA, and the Rehabilitation Act. Mr. Hammonds also asks that the court enjoin Defendants' practices, order the development and implementation of appropriate practices, and award monetary damages and punitive damages, as well as attorneys' fees, costs, and interest.

**DISCUSSION**

  A. <u>Count I: ADA and Rehabilitation Act</u>

  According to Mr. Hammonds, Defendants violated Title II of the ADA and Section 504 of the Rehabilitation Act by failing to accommodate his Type-I diabetes and by discriminating against him on the basis of his Type-I diabetes. Specifically, Mr. Hammonds states that Defendants discriminated against him by placing him in administrative segregation and by failing to provide a diabetes-compliant diet and space and permission to exercise. Mr. Hammonds further alleges that Defendants discriminated against him because of his diabetic condition by refusing to allow him access to "basic inmate services; regular mealtimes; the opportunity to exercise; the ability [to] access [] the inmate kiosk and known needs for his diabetic condition." (Doc. 39 ¶ 163).

  Defendants argue that Mr. Hammonds has failed to state a claim for relief because the Second Amended Complaint fails to provide facts sufficient to draw a discriminatory connection between the alleged denial of services and Mr. Hammonds's condition. The court agrees.[1]

  "To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he is a 'qualified individual with a disability;' (2) that he was excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of such disability.'" *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132). Similarly, a *prima facie* case for

---

[1] Defendants also contend that, at the time he arrived at the jail, Mr. Hammonds's Type-I diabetes was not a disability, although they acknowledge that it may qualify as one under certain circumstances not present here. (*See* Doc. 46 at 8-9, 11 n.8). Because the court finds that Mr. Hammonds fails to allege sufficient facts to show that Defendants discriminated against him because of his disability, the court does not address that argument.

discrimination under the Section 504 of the Rehabilitation Act requires a plaintiff to show (1) that he is "handicapped" within the meaning of the Act and relevant regulations; (2) that he is "otherwise qualified" to participate in the program or activity; (3) that the program or activity received federal financial assistance; and (4) that he was adversely treated solely because of his handicap. *See Jackson v. Veterans Administration*, 22 F.3d 277, 278 (11th Cir. 1994).

For the same reasons as discussed in the court's prior Memorandum Opinion (doc. 26 at 12-16), Mr. Hammonds has failed to state a claim for relief under the ADA and the Rehabilitation Act. A defendant does not violate the ADA or Rehabilitation Act merely because it failed to provide medical care to disabled prisoners or detainees. *See Cash v. Smith*, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000) (observing that discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases and that cases decided under the Rehabilitation Act are precedent for cases under the ADA); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (holding that "purely medical decisions" do not ordinarily fall within the scope of the ADA).

To state a claim under the ADA and or Rehabilitation Act Mr. Hammonds would need to bring non-conclusory allegations that Defendants treated him worse than other prisoners *because of* Mr. Hammonds's Type-I diabetes. Mr. Hammonds identifies a potential disability (diabetes) and several adverse actions (*e.g.*, the misdiagnosis, the placement of Mr. Hammonds in administrative segregation, and his restriction from using the prisoner-services kiosk), but he does not allege facts that suggest Defendants chose to mistreat him because he had diabetes.

Accordingly, the court finds that Count I is due to be DISMISSED WITH PREJUDICE in favor of all Defendants. *See Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (stating that a claim

must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

      B.  <u>Count II: § 1983 Deliberate Indifference to Serious Medical Needs (DeKalb County)</u>

Mr. Hammonds bases his first § 1983 claim on the County's alleged deliberate indifference to his serious medical needs as a pretrial detainee, in violation of the Fourteenth Amendment. He states that "[p]ursuant to DeKalb County's jail policy and long-standing policy" he "was not identified" as a Type-I diabetic and did not receive the appropriate treatment or management. (Doc. 39 ¶ 176). Mr. Hammonds repeats his contention that the County has such a policy several times. Mr. Hammonds also alleges that the County "owns and funds the operation of the jail, its personnel, including medical staff, and employs Dr. Theakston for the part time provision of medical care for persons incarcerated there." (Doc. 39 ¶ 170). Mr. Hammonds further contends that the County "had a policy and practice of not adequately funding inmate medical care with deliberate indifference to the serious medical needs of inmates . . . ." (Doc. 39 ¶ 171).

The County disputes the legal accuracy of Mr. Hammonds's allegations, arguing that, as a matter of law, it cannot be liable for incidents in the county jail. It contends that Mr. Hammonds's claims arise out of the jail's day-to-day operations and that, under Alabama law, the County does not employ Sheriff Harris and has no role in his supervision of jail employees, including Dr. Theakston. In the County's view, its role is limited to building, maintaining, and funding the jail; it does not have a duty to provide jailers and medical staff with adequate training or any similar "ministerial" responsibility related to day-to-day jailhouse operations.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: "(1) a violation of a constitutional right; and (2) that the alleged violation was committed by a person acting under

6

the color of state law or a private individual who conspired with state actors." *See Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016). Mr. Hammonds alleges that the County violated his right to be free from deliberate indifference to his serious medical needs. *See id.* ("As a pretrial detainee . . . , [the plaintiff's] rights arose under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment."). To state a claim for deliberate indifference to a serious medical need, a plaintiff must sufficiently allege: "(1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Id.*

The court must dismiss Mr. Hammonds's claim against the County to the extent he bases it on the County's employment of the individual defendants or other unnamed persons. *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (holding that local government bodies may not be held liable under § 1983 solely because they employ a tortfeasor); *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 689 (1978). Instead, a plaintiff must allege a "direct causal link" between a county policy or custom and the alleged constitutional deprivations. *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1171 (11th Cir. 1995).

That is, a plaintiff must allege "that the failing was a conscious choice by policymakers among alternative courses of action, which in turn, caused the jailers' deliberate indifference." *Id.* at 1171-72. "Before it may be said that a municipality has made a deliberate choice among alternative courses of action, its policymakers must have had 'actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens.'" *Id.* at 1172.

First, Mr. Hammonds's contention that the County had a "long-standing policy" of ignoring patients with medical needs is unsupported by any specific factual allegations, and,

moreover, contrary to the duties Alabama counties have regarding county jails. Under Alabama law, a county government is obligated to provide *funding* for a county jail, but it does not supervise the jail's day-to-day operations. *See, e.g.*, Ala. Code §§ 11-14-10 (stating that the county has a duty to build and maintain a jail); 11-12-15(a) (detailing various appropriations for county jails). Although the county appropriates funds for a sheriff and his subordinates' salaries, the duty of Alabama counties to pay those salaries "does not translate into control over them." *McMillian v. Monroe Cty., Ala.*, 540 U.S. 781, 791 (1997). Instead, the sheriff, who the state controls rather than the county, maintains responsibility for day-to-day supervision. *See* Ala. Code § 14-6-1; *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998) ("The [c]ounty has no authority to manage the sheriff's employees. . . . A state agency . . . oversees the county jails and has the authority to regulate them.").

Essentially then, the County's obligations regarding the DeKalb County jail are "limited to funding the operation of the jail and to providing facilities to house the jail." *Turquitt*, 137 F.3d at 1289 (quoting *Stark v. Madison County*, 678 So. 2d 787, 787 (Ala. Civ. App. 1996)); *see also Keeton v. Fayette Cnty.*, 558 So. 2d 884, 886 (Ala. 1989). Mr. Hammonds's allegation that the County nevertheless had the ability to implement policies and procedures at the jail fails because it is an unsupported legal conclusion, not a factual assertion that the court must take as true when evaluating a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (noting that the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]").

Notwithstanding the County's lack of legal control, Mr. Hammonds still fails to allege with any specificity any county policy or procedure that would have caused or enhanced his injuries. Trimmed of its conclusory fat, the Second Amended Complaint says that Dr. Theakston misdiagnosed Mr. Hammonds and that Mr. Martin ignored signs of that misdiagnosis, causing or

enhancing Mr. Hammonds's injuries. Mr. Hammonds does not connect Dr. Theakston's or Mr. Martin's acts to any specific policy or procedure implemented by the County.

Second, Mr. Hammonds has also failed to state a plausible allegation that the County inadequately funded the jail's medical facilities. Mr. Hammonds alleges that the County did not provide sufficient funding for the jail to buy the necessary insulin for his condition. Mr. Hammonds connects the County's failure to provide that insulin as a reason for his treatment for the wrong type of diabetes. And Mr. Hammonds is correct that the lack of proper medical supplies could explain why Dr. Theakston chose to treat him for Type-II diabetes rather than Type-I diabetes.

But, Mr. Hammonds fails to allege any relevant facts that would have put the County on notice that it inadequately funded the jail's medical facilities. *See Young*, 59 F.3d at 1172; *see also McDowell v. Brown*, 392 F.3d 1283, 1291-92 (11th Cir. 2004) (holding that a county's liability "cannot be dependent on the scant likelihood that its budget decisions will trickle down the administrative facets and deprive a person of his constitutional rights"). On that point, Mr. Hammonds relies on the DHS Report. But the DHS Report does not note any deficiencies related to the provision of medical supplies at the jail.

For those reasons, Count II in the Second Amended Complaint will be DISMISSED WITH PREJUDICE.

  C. <u>Counts III, IV, and V: § 1983 Deliberate Indifference to Serious Medical Needs</u>

Mr. Hammonds's final three claims allege that Sheriff Harris, Dr. Theakston, and Mr. Martin, respectively, violated § 1983 because they were deliberately indifferent to his serious medical need. Defendants assert that qualified immunity applies because no law clearly established that their conduct violated the Constitution. The court agrees that Sheriff Harris is

entitled to qualified immunity because Mr. Hammonds has failed to state a claim that Sheriff Harris violated his constitutional rights under either a personal participation or supervisory theory.

However, Mr. Hammonds has stated a plausible claim for relief against Dr. Theakston and Mr. Martin. Mr. Hammonds alleges specific facts that, when taken as true, establish that Dr. Theakston and Mr. Martin personally participated in grossly incompetent treatment of Mr. Hammonds's Type-I diabetes. And because Mr. Hammonds's right to adequate medical care under these circumstances is "clearly established," Dr. Theakston and Mr. Martin are not entitled to qualified immunity if Mr. Hammonds's allegations hold true.

The applicability of qualified immunity is a question of law. *Willingham v. Loughnan*, 261 F.3d 1178, 1184 (11th Cir. 2001). To receive qualified immunity, a government officer must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The burden then shifts to the plaintiff to show that qualified immunity is inappropriate. *Id*. Mr. Hammonds and the individual defendants agree that the individual defendants were acting in the scope of their discretionary authority when the wrongful acts occurred.

Qualified immunity is only inappropriate if the plaintiff has alleged the deprivation of a clearly-established constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Accordingly, the court asks whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a constitutional right" and that the right was clearly established. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier*, 533 U.S. at 201).

All three individual defendants argue that they did not personally participate in any unconstitutional conduct and that their actions as supervisors had no causal connection to the alleged constitutional violation. The court addresses this § 1983 and qualified immunity issue in the following order: (1) whether the individual defendants personally participated in unconstitutional conduct; (2) whether the individual defendants' actions as supervisors had a causal connection to the alleged constitutional violation; and (3) whether any right the individual defendants violated was clearly established.

*1. Denial of Constitutional Right: Personal Participation*

Mr. Hammonds first premises the individual defendants' liability on their personal participation in the alleged deliberate indifference to a serious medical need. To show that a defendant was deliberately indifferent to a serious medical need, a plaintiff must plead specific facts that the jail official possessed a "subjective awareness" of facts signaling a serious medical need. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). The jail official must have drawn an inference from his "subjective awareness" to the plaintiff's need for medical attention. *Id.* Finally, the jail official's response must have been objectively insufficient. *Id.*

*a. Sheriff Harris's Personal Participation*

Mr. Hammonds does not allege any fact suggesting that Sheriff Harris possessed a subjective awareness that he had a serious medical need. Mr. Hammonds implies that Sheriff Harris should have known about Mr. Hammonds's medical treatment or lack thereof because he was "responsible for the care and custody of inmates in the DeKalb County jail." (*See* Doc. 55 at 28). But "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *See Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

11

Mr. Hammonds also says that his condition was "made known multiple times" to Sheriff Harris, but does not allege how. (*See, e.g.*, Doc. 39 ¶¶ 252, 259, 282). Although Sheriff Harris had notice that Mr. Hammonds had Type-I diabetes, none of the circumstances noted in the Second Amended Complaint suggest that anyone ever made Sheriff Harris aware of Mr. Hammonds's health situation *as it deteriorated*. Without any supporting facts, the court has no plausible grounds to infer that Mr. Hammonds's misdiagnosis and critical condition was ever "made known" to Sheriff Harris. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that courts will ask only "for plausible grounds to infer" conclusions and that such requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal" facts proving the conclusion).

Because Sheriff Harris did not have a subjective awareness that Mr. Hammonds had a serious medical need that nobody was appropriately attending, the Second Amended Complaint does not state a deliberate indifference claim against Sheriff Harris under a personal participation theory.

### b. Dr. Theakston's Personal Participation

Next, the Second Amended Complaint states a claim that Dr. Theakston provided grossly inadequate medical treatment to Mr. Hammonds. Medical malpractice alone cannot support a claim for deliberate indifference. *See Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989).

However, the provision of grossly inadequate medical care can rise to deliberate indifference. *See Melton*, 841 F.3d at 1223 (observing that deliberately indifferent conduct includes grossly inadequate medical care). Mr. Hammonds told Dr. Theakston that he had Type-I diabetes, but Dr. Theakston treated for Type-II diabetes. Presupposing that the treatments for Type-I diabetes and Type-II diabetes are not substitutes, the court can infer that Dr. Theakston, a

12

physician, knew that treating Mr. Hammonds for Type-II diabetes when he had Type-I diabetes could or likely would lead to Mr. Hammonds's serious medical complications.

Dr. Theakston characterizes his misdiagnosis as a "disagreement" on the course of treatment between doctor and patient. At this stage, however, the court must draw all inferences in Mr. Hammonds's favor, and so the facts suggest that Dr. Theakston's treatment was not an alternative treatment, but an objectively wrong treatment. Accordingly, the court finds that the Second Amended Complaint states a plausible claim that Dr. Theakston acted with deliberate indifference to Mr. Hammonds's serious medical need.

  c.  *Mr. Martin's Personal Participation*

Mr. Hammonds also pleads sufficient facts to state a claim that Mr. Martin violated the Constitution by failing to act when informed that Mr. Hammonds was suffering a serious medical crisis. *See Mandel*, 888 F.2d at 789 (stating that defendant's cavalier disregard of repeated indications that the plaintiff's condition was serious or more serious than original diagnosis concluded could amount to deliberate indifference).

According to the Second Amended Complaint, Mr. Hammonds's family called 911 because of their concern for Mr. Hammonds's health. Somebody told Mr. Martin about the call. Rather than intervening by, for example, forwarding the information to another administrative official or directing a subordinate to reexamine Mr. Hammonds, Mr. Martin told the Hammonds family to leave him alone.[2] Mr. Hammonds's family pled with Mr. Martin to intervene, or to permit them to provide the necessary medication. Mr. Martin did nothing. Further, Mr. Martin

---

[2] Mr. Martin contends that upon learning about Mr. Hammonds's health crisis, he had Mr. Hammonds transferred to a medical ward. Mr. Martin omits that the medical ward was empty, that Mr. Martin then threatened Mr. Hammonds, and that Mr. Hammonds did not receive treatment at that time.

13

personally "threatened and mocked" Mr. Hammonds after his phone call with Mr. Hammonds's family.

Taking Mr. Hammonds's allegations as true, Mr. Martin had the ability, once informed about Mr. Hammonds's deteriorating condition, to intervene and direct a change in treatment. Mr. Martin, as the Chief Jail Administrator and Dr. Theakston's supervisor, was "in a position to take steps that could have averted" Mr. Hammonds's injuries but failed to do so despite his "duties, discretion, and means." *See Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 622 (11th Cir. 2007); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (stating that an official's actions amount to deliberate indifference when he "knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate"); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Failure to respond to a known medical problem can also constitute deliberate indifference.").

Finally, although Mr. Hammonds eventually received medical treatment, it was too little, too late. The Eleventh Circuit has consistently found delays in medical care to be constitutionally cognizable injuries. *See McElligott*, 182 F.3d at 1255 ("Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs[.]"). The court thus finds that the Second Amended Complaint states a plausible claim that Mr. Martin violated Mr. Hammonds's constitutional rights.

   2. *Denial of Constitutional Right: Causal Connection Between Supervisors and Alleged Constitutional Deprivation*

As another basis for liability, Mr. Hammonds alleges that the individual defendants' actions as supervisory officials had a causal connection to his injuries. "[S]upervisory officials

are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). Instead, liability outside a supervisory defendant's personal participation requires a "causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id*. A plaintiff can establish a causal connection when: (1) the supervisor had notice of a widespread history of abuse that he failed to correct; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights; or (3) the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quoting *Gonzalez*, 325 F.3d at 1234-35).

First, Mr. Hammonds offers a conclusory statement that the DeKalb County jail under Sheriff Harris has a widespread history of medical mistreatment. However, Mr. Hammonds does not elaborate. Mr. Hammonds alludes to other incidents of prisoner mistreatment, but provides zero examples beyond his own. The DHS Report is unhelpful to Mr. Hammonds for the reasons stated in the court's first Memorandum Opinion (doc. 26). That is, although the DHS Report notes that the prisoners' initial medical examinations were untimely, that is not a harm that Mr. Hammonds suffered. Rather, Mr. Hammonds alleges that Dr. Theakston examined him on his arrival, but misdiagnosed and improperly treated him.

Second, Mr. Hammonds repeatedly contends that jail officials mistreated patients under the "prevailing policy and practice." The only detail, however, that Mr. Hammonds offers on that "prevailing policy and practice" is an "emergency medical plan," which Mr. Hammonds indicates told jail staff to contact medical staff and complete written reports when an emergency

15

presented. (Doc. 39 ¶¶ 336, 395). That plan is not a plausible cause of Mr. Hammonds's injuries.

Third, beyond the conduct already discussed above regarding Dr. Theakston's and Mr. Martin's personal participation, Mr. Hammonds does not allege any facts indicating that the individual defendants directed their subordinates to act unlawfully. Although Mr. Hammonds appears to contend that the individual defendants failed to adequately train their subordinates, he fails to draw a connection between their lack of training and his injuries. Dr. Theakston, a trained physician, examined Mr. Hammonds and chose to treat Mr. Hammonds for Type-II diabetes rather than Type-I diabetes. Mr. Hammonds does not explain how additional training for the jail officers would have changed Dr. Theakston's prescription or Mr. Martin's inaction.

Similarly, Mr. Hammonds alleges that "under the practice established by [Sheriff] Harris, medicine is administered by jailers and not trained medical staff." (Doc. 39 ¶ 261). Again, Mr. Hammonds fails to connect to his injuries the jail staff's implementation of Dr. Theakston's misdiagnosis and treatment plan.

For all those reasons, Mr. Hammonds cannot proceed under § 1983 on a theory that the individual defendants caused his injuries as supervisors. Because Mr. Hammonds cannot show that Sheriff Harris personally participated in the alleged conduct or that his actions as a supervisor caused Mr. Hammonds's injuries, the court need not continue its qualified immunity analysis as to Sheriff Harris. Count III, which contains Mr. Hammonds's § 1983 claims against Sheriff Harris, will be DISMISSED WITH PREJUDICE. Mr. Hammonds can, however, proceed on a theory that Dr. Theakston and Mr. Martin caused his injuries by personally participating in the alleged unconstitutional conduct.

### 3. Clearly Established Right

Lastly, the provision of grossly inadequate medical care that causes an inmate to unnecessarily suffer severe pain is a clear violation of a prisoner's rights. *See Melton*, 841 F.3d at 1226-27. Mr. Hammonds, who suffered acute kidney and renal failure among other injuries, has pleaded facts that he endured severe pain because of Dr. Theakston's grossly inadequate medical care and Mr. Martin's failure to intervene when put on notice of Mr. Hammonds's serious medical need.

Under *Melton* and similar cases involving failures to intervene, Mr. Hammonds's right to adequate medical care was sufficiently "clearly established" that a reasonable official would understand that what he was doing in the alleged circumstances violated Mr. Hammonds's rights. *See Mandel*, 888 F.2d at 788; *McElligott*, 182 F.3d at 1255; *see also Steele v. Shah*, 87 F.3d 1266, 1269-70 (holding that deliberate indifference may be established when an official took an easier but less effective course of treatment); *Waldrop*, 871 F.2d at 1034-35 (same).

Accordingly, neither Dr. Theakston nor Mr. Martin is entitled to qualified immunity.

## CONCLUSION

For the reasons stated, the court will GRANT DeKalb County's and Sheriff Harris's motions to dismiss. As to Dr. Theakston and Mr. Martin, the court will GRANT IN PART and DENY IN PART.

Counts I, II, and III will be DISMISSED WITH PREJUDICE. Because no claims remain against DeKalb County and Sheriff Harris, they will be dismissed as parties. Mr. Hammonds may proceed with Counts IV and V only as they pertain to Dr. Theakston's and Mr. Martin's personal participation in the alleged unconstitutional conduct.

The court will enter a separate Order consistent with this Memorandum Opinion.

Dated this 16th day of October 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE